**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Chester Gibson,                                          )
    *Plaintiff,*                                    )
                                                         )
v.                                                       )
                                                         )
Peyton Grinnell, in his official capacity as SHERIFF     )    CIVIL DIVISION:
of Lake County, Robert aka Roberth Mata and              )
Christopher Rafferty, individually,                      )    CASE NO:
    *Defendants*.                                  )
_____/

## COMPLAINT

**COMES NOW,** Chester Gibson, by and through undersigned counsel, and seeks money damages of more than $50,000.00 (fifty-thousand dollars), exclusive of costs, interest and attorneys' fees and sues the Sheriff of Lake County, Robert Mata and Christopher Rafferty, in their individual capacities, and states:

### JURISDICTIONAL ALLEGATIONS

1. This is an action in excess this Court's jurisdictional threshold.

2. Chester Gibson claims are made pursuant to 42 U.S.C. Sections 1983 and 1988; 4th and 14th Amendments to the Constitution of the United States of America; Fla. Stat. 768 and Florida Constitution, Article 1, sections 9 and 12.

3. Chester Gibson hereby invokes supplemental jurisdiction of the United States District Court to adjudicate state tort claims arising under Florida law pursuant to 28 U.S.C. Section 1367 and further invokes the jurisdiction of the United States District Court pursuant to 28 U.S.C. Sections 1331 and 1343.

### PARTIES

4. Chester Gibson [hereinafter, GIBSON] is an adult resident of the State of Florida domiciled in Palm Beach County, Florida.

5. Defendant, Peyton Grinnell [hereinafter, SHERIFF] is sued, in his official capacity as Sheriff of Lake County, Florida. In this cause, Defendant, Sheriff acted through his agents, employees, and servants.

6. Defendant, Robert aka Roberth Mata [hereinafter, MATA] a deputy Sheriff employed by the Sumter County Sheriff, is, or was an adult at the time that the present cause of action arose and is being sued herein in his individual capacity.

7. Defendant, Christopher Rafferty [hereinafter, RAFFERTY] a deputy Sheriff employed by the Sumter County Sheriff, is, or was an adult at the time that the present cause of action arose and is being sued herein in his individual capacity.

8. All acts and occurrences material to this cause of action were committed in Lake County, Florida.

## CONDITIONS PRECEDENT

9. All conditions precedent to the prosecution of this action have occurred, or have been performed, excused, or waived.

## GENERAL ALLEGATIONS

Plaintiff alleges the allegations of paragraph 1-9 as fully set forth in the present general allegations.

10. On April 26, 2019, SHERIFF'S agent, MATA, performed a traffic stop on GIBSON while traveling on his motorcycle in Lake County, FL. GIBSON was not given a traffic citation by MATA or advised of the basis for the stop.

11. The Lake County Sheriff's Office was conducting combined agency Driving Under the Influence (DUI) interdiction pursuant to an *Operational Assistance and Voluntary Cooperation Mutual Aid Agreement* [hereinafter, AGREEMENT].

12. The combined agencies conducting the DUI interdiction operation were the Lake and Sumter County Sheriff's Departments, respectively.

13. The agencies' joint law enforcement DUI operation was conducted in Lake County, FL. GIBSON'S traffic stop, and subsequent roadside detention also occurred in Lake County, Florida.

14. Pursuant to the AGREEMENT, the Lake County Sheriff assumed command and supervisory responsibility of the operation; however, each agent engaging in cooperation and assistance pursuant to the AGREEMENT retained liability subject to the provisions of Fla. Stat. 768.28.[1]

15. An additional SHERIFF'S agent operating under his command and supervisory responsibility, after MATA'S traffic stop was RAFFERTY. He eventually was dispatched to GIBSON'S traffic stop location. GIBSON is an off-duty out-of-county Florida SHERIFF'S deputy.

16. Despite the absence of slurred speech, a normal walking pattern and cognitive discourse with all roadside law enforcement personnel as captured by body-worn camera evidence, RAFFERTY requested that GIBSON submit to physical field side sobriety tasks [hereinafter, FST].

17. GIBSON advised RAFFERTY that he had multiple medical issues prohibiting him from completing the tasks as he was familiar with the physical requirements associated with the field exercises because of his own law enforcement duites. He specifically told RAFFERTY, in the presence of additional SHERIFF'S agents, that he was afflicted by a condition which necessitated frequent catharized urination.

---

[1] Fla. Stat. 768.28(9)(a) prescribes Florida common law liability for individual capacity malicious prosecution.

      GIBSON further advised RAFFERTY in the presence of additional SHERIFF'S agents, that he needed to relieve himself, and that if he was not able to do so, the onset of renal failure could result.

18. GIBSON had been diagnosed with diabetes, stage 3 renal failure and a neurogenic bladder. The chief complaint on the night of his DUI detention was the need to urinate which required bladder catheterization.

19. Bladder catheter devices were carried by GIBSON from his initial traffic stop to the roadside detention location with RAFFERTY. The body worn camera video from GIBSON'S detention recorded the catheter units within arm's reach of RAFFERTY and GIBSON.

20. When GIBSON requested medical attention, he was not transported to a hospital or provided movement to an ambulance when he initially requested to be transported or accommodated. Instead, RAFFERTY pressured GIBSON to perform FST exercises. After initially being denied hospitalization, GIBSON finally relented and attempted modified FSTs in a seated position.

21. Following the FST exercises, RAFFERTY elected to place GIBSON under arrest for DUI *then* requested GIBSON to provide a breath sample. GIBSON again requested transportation to a hospital for his medical issues.

22. GIBSON also clearly and explicitly advised RAFFERTY that he risked renal failure if he were not permitted to relieve himself considering his medical condition and the excessive amount of time since the traffic stop.

23. Eventually medical personnel were dispatched to the roadside scene. The DUI investigation continued while GIBSON was being cursorily examined. The

prolonged period of the roadside law enforcement procedures and intermittent examination resulted in GIBSON'S increased necessity to urinate.

24. Although GIBSON requested to be taken to a hospital earlier during the roadside encounter with RAFFERTY, he was then given an ultimatum a substantial time later of being transported to a medical facility or catheterizing himself outdoors behind the SHERIFF'S mobile breathalyzer operator's SUV.  This ultimatum was given to him despite the presence of an awaiting ambulance that had been dispatched *for him* which could have been utilized to allow GIBSON privacy and dignity during bladder self-catheterization to urinate.

25. GIBSON could not risk renal complications by waiting longer to be driven to a hospital.  He was never given an opportunity to temporarily enter the awaiting ambulance to void himself; therefore, GIBSON reluctantly decided to self-catheterize outdoors.  GIBSON'S spouse was allowed to physically assist him during the embarrassing roadside catheterization.

26. RAFFERTY remained within the proximity of GIBSON'S outdoor self-catheterization, then completed the DUI arrest. GIBSON was never cited for the alleged traffic infraction giving rise to DUI suspicion, roadside detention, and charge upon his arrest.

27. Once GIBSON was booked into the Lake County Jail, he was not given access to his own catheters which RAFFERTY took from the arrest location and gave to the jailers, or comparable replacement self-catheter devices.  Moreover, GIBSON was also not afforded insertion of a long-term foley catheter to facilitate urination while in custody.

28. The Lake County Jail's policies and procedures regarding medical evaluation of incoming detainees did not require GIBSON to be examined within a specified time frame after booking. The SHERIFF'S policies shifted the burden to GIBSON to submit a "sick call request." This procedure was not available to new arrestees held in the intake area of the jail. The SHERIFF'S policies regarding medical assistance merely directed detainees to "contact the deputy on duty immediately." Even if this procedure were effective, GIBSON was never advised of this "policy" while in intake custody. This process was not available for intake detainees.

29. Moreover, upon arrival at the jail, GIBSON's clothing was confiscated. He was then placed in confinement and provided a blanket.

30. GIBSON requested new catheters while undergoing several hours of confinement but was not given necessary medical assistance. Accordingly, he was forced to reuse his contaminated self-catheter until his release from custody the next day.

31. The Office of the State Attorney, in and for Lake County, Florida, commenced prosecution against GIBSON.

32. A non-bargained for *nolle prosse* for the DUI was entered in the case.

**COUNT I (ONE)**
**VIOLATION OF GIBSON'S, 14TH AMENDMENT RIGHTS AGAINST SHERIFF COGNIZABLE UNDER 42 U.S.C. § 1983**

For GIBSON'S cause of action against Defendant, SHERIFF in Count I, GIBSON re-alleges and adopts, as if fully set forth, the allegations contained in paragraphs 1-32, and would further state as follow:

33. On April 26, 2019, Defendant SHERIFF'S agent MATA, while working under SHERIFF'S command and supervision, and under the color of law, did knowingly

and intentionally seize GIBSON. He unlawfully detained GIBSON by conducting a traffic stop without articulating reasonable suspicion, actual or arguable probable cause. GIBSON was never cited for a traffic infraction.

34. MATA, a Sumter County Sheriff's deputy was SHERIFF'S agent operating pursuant to the AGREEMENT in Lake County, Florida.

35. The seizure continued and was intentionally and unreasonably prolonged by MATA then RAFFERTY, after the traffic stop, resulting in the excessive duration of GIBSON'S roadside detention.

36. RAFFERTY and additional SHERIFF'S agents present during GIBSON'S roadside detention became actually aware of GIBSON'S serious medical condition. RAFFERTY and the SHERIFF'S additional agents concede that GIBSON advised them of his medical status.

37. Despite RAFFERTY and the SHERIFF'S additional agents' actual awareness of GIBSON'S medical condition, GIBSON'S medical needs were intentionally ignored to facilitate performance of the FST and DUI investigation.

38. The delay and intentional failure to facilitate medical attention caused GIBSON'S physical suffering and exacerbation of GIBSON'S renal condition resulting in the SHERIFF'S deliberate indifference to GIBSON'S medical needs. RAFFERTY and SHERIFF'S additional roadside agents knew of and disregarded this excessive risk to GIBSON'S health and safety.

39. The SHERIFF'S adopted AGREEMENT was devoid of any provisions or guidance for routine medical or emergency medical contingencies encountered by law enforcement operatives working under the SHERIFF'S command and supervisory responsibility.

40. RAFFERTY, a Sumter County Sheriff's deputy, was SHERIFF'S agent operating pursuant to the AGREEMENT in Lake County, Florida.

41. SHERIFF was on actual or constructive notice that the omission of provisions or guidance for routine medical or emergency medical contingencies encountered by law enforcement operatives working pursuant to the AGREEMENT would likely result in a constitutional violation as SHERIFF'S jurisdictional general orders and comparable directives *had provisions or guidance* for Lake County deputies pertaining to an arrestee's medical needs.

42. After GIBSON was taken to the Lake County jail, SHERIFF'S inmate policies and procedures regarding medical evaluation of new detainees did not require GIBSON to undergo a medical examination within a specified time frame.

43. The SHERIFF'S jail policies required GIBSON to submit a "sick call request" to initiate examination or treatment. This procedure was not available to new detainees with GIBSON'S status at the jail.

44. The SHERIFF'S policies regarding medical problems merely directed detainees to "contact the deputy on duty immediately." Even if this procedure were effective, GIBSON was not, and could not be advised of this "policy" during initial jail intake custody as he was segregated and placed in confinement. There were not adequate provisions to treat GIBSON's medical needs during his intake and segregation status.

45. This policy was the moving force resulting in the SHERIFF'S failure to treat GIBSON'S serious medical condition resulting in physical pain, discomfort, bacterial vulnerability, and exacerbation of his renal condition.

46. Assuming arguendo, that SHERIFF promulgated a constitutional jail medical treatment directive, during GIBSON'S processing and confinement in the Lake County jail, the following violations of SHERIFF'S policy occurred, to wit:

    a. failure to conduct intake medical screening *in accordance* with SHERIFF'S jail policies and procedures; and

    b. prescribed catheters taken into the jail by the arresting officer for GIBSON'S use were never distributed to him by medical personnel *in accordance* with SHERIFF'S jail policies and procedures.

47. The SHERIFF'S adoption of the AGREEMENT and deployment of law enforcement agents, without provisions or guidance for routine medical or emergency medical contingencies constituted deliberate indifference to GIBSON'S serious medical needs in violation of the 14th Amendment of the U.S. Constitution and 42 U.S.C. §1983.

48. The SHERIFF'S inmate medical policies and procedures regarding intake jail detainees, also constituted deliberate indifference to GIBSON'S serious medical needs in violation of the 14th Amendment of the U.S. Constitution and 42 U.S.C. §1983.

49. In the alternative, the failure to provide for GIBSON'S serious medical needs were occasioned by and specifically authorized the SHERIFF with final decision-making authority and was the moving force behind the 14th Amendment constitutional violations as alleged in the foregoing *Complaint*.

50. As a direct and proximate result of the actions of SHERIFF and agents acting under SHERIFF'S command and supervision in violation of 42 U.S.C. §1983, GIBSON suffered damages which include physical inconvenience, physical discomfort,

emotional suffering, distress and anxiety, embarrassment, loss of reputation or status, loss of enjoyment of life, economic loss, legal costs and fees.

**WHEREFORE**, GIBSON demands judgment against the Defendant, SHERIFF, for all damages allowable by law, including but not limited to compensatory damages, award of payment of all costs related thereto, reasonable attorney's fees pursuant to 42 U.S.C. §1988, together with any post-judgment interest, all equitable relief allowed by law, and further demands trial by jury.

### COUNT II (TWO)
### VIOLATION OF GIBSON'S, 14TH AMENDMENT RIGHTS AGAINST RAFFERTY, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For GIBSON'S cause of action against RAFFERTY, in count II, individually, GIBSON re-alleges and adopts, as if fully set forth, the allegations contained in paragraphs 1-26, 35-38 and 46b, and further states as follows:

51. RAFFERTY, under color of law, did intentionally and unreasonably detain GIBSON after the traffic stop by MATA resulting in GIBSON'S prolonged roadside detention without GIBSON'S consent and against his will.

52. RAFFERTY asked GIBSON to perform FSTs.  GIBSON advised RAFFERTY that he was afflicted by multiple medical issues, specifically a condition requiring catheterization which necessitated frequent urination prohibiting him from completing the tasks.

53. GIBSON further advised RAFFERTY that he needed to relieve himself, and that if he was not able to do so, renal complications could result because of his medical condition.

54. RAFFERTY was, therefore, actually aware of GIBSON'S serious medical condition.

55. Despite RAFFERTY'S awareness of GIBSON'S medical condition, RAFFERTY further prolonged commencement of immediate medical attention, and GIBSON'S ability to be timely transported to a hospital. The delay caused GIBSON pain, anxiety, and the onset of physical urologic distress.

56. The conduct of RAFFERTY, towards PLAINTIFF, as more fully set forth above, was objectively unreasonable in light of the facts and circumstances thereby constituting violation of clearly established existing law, the Fourteenth Amendment and 42 U.S.C. § 1983.

57. In the alternative, in the absence of clearly established existing law, a reasonable official in light of the facts and circumstances which were objectively apparent or known by RAFFERTY, would understand that his actions would, and did violate the Fourteenth Amendment and 42 U.S.C. § 1983.

58. As a direct and proximate result of RAFFERTY'S actions, in violation of 42 U.S.C. §1983, PLAINTIFF suffered damages which include: physical pain and suffering; physical inconvenience; physical discomfort; medical expenses; mental anguish and emotional suffering; embarrassment; loss of employment; loss of wages; legal costs and fees.

**WHEREFORE**, GIBSON demands judgment against RAFFERTY, for any and all damages allowable by law for compensatory and exemplary damages, award of payment of all costs related thereto, reasonable attorney's fees pursuant to 42 U.S.C. §1988, together with any post-judgment interest, any and all equitable relief allowed by law, and further demands trial by jury.

**COUNT III (THREE)**
**FALSE ARREST CLAIM AGAINST RAFFERTY, INDIVIDUALLY,**
**COGNIZABLE UNDER 42 U.S.C. § 1983**

For GIBSON'S cause of action against RAFFERTY, in Count III, GIBSON re-alleges and adopts, as if fully set forth, the allegations contained in paragraph 1-26, as if fully set forth in this Count and would further state as follows:

59. On or about April 26, 2019, the actions of RAFFERTY, individually, in causing the seizure, physical restriction of liberty and/or arrest of GIBSON were taken without lawful authority.

60. GIBSON did not consent to RAFFERTY' actions.

61. The conduct of RAFFERTY, individually, towards GIBSON was objectively unreasonable and violated GIBSON'S clearly established rights under the 4th Amendment of the United States Constitution; Florida Constitution, Article 1, Section 9 and 12, and 42 U.S.C. § 1983, to be free from seizure and arrest in the absence of probable cause, lawful authority or consent.

62. As a direct and proximate result of the acts described herein, RAFFERTY'S actions were in violation of 42 U.S.C. §1983.

63. As a further direct and proximate result of the conduct of RAFFERTY in the present case GIBSON suffered: loss of liberty and freedom, physical inconvenience, physical discomfort, mental anguish, emotional suffering, embarrassment, humiliation, injury to his reputation, loss of wages, economic loss, legal costs and fees. PLAINTIFF'S monetary losses are continuing and accrue.

**WHEREFORE**, PLAINTIFF demands judgment for compensatory and exemplary damages, cost of this action together with any post-judgment interests, reasonable

attorney's fees pursuant to 42 U.S.C. §1988, trial by jury as to all issues so triable, and other such relief as this Honorable Court may deem just and appropriate.

**COUNT IV (FOUR)**
**VIOLATION OF GIBSON'S, 4TH AMENDMENT RIGHTS AGAINST MATA, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983**

For GIBSON'S cause of action against MATA, in Count IV, GIBSON re-alleges and adopts, as if fully set forth, the allegations contained in paragraph 1-15 and 33-35 as if fully set forth in this Count and would further state as follows:

64. On or about April 26, 2019, the actions of MATA, individually, in causing the seizure of GIBSON were taken without lawful authority.

65. GIBSON did not consent to MATA'S initial and continuing seizure arising from the traffic stop. The seizure was not based upon a traffic infraction, reasonable suspicion, actual or arguable probable cause.

66. In the alternative and assuming arguendo, that GIBSON'S seizure arose from a lawful traffic infraction, the roadside detention duration exceeded the reasonable time frame to issue a traffic citation.

67. The conduct of MATA, individually, towards GIBSON was objectively unreasonable and violated GIBSON'S clearly established rights under the 4th Amendment of the United States Constitution; Florida Constitution, Article 1, Sections 9 and 12, and 42 U.S.C. § 1983, to be free from unreasonable seizure.

68. As a direct and proximate result of the acts described herein, MATA'S actions were in violation of 42 U.S.C. §1983.

69. As a further direct and proximate result of the conduct of MATA in the present case GIBSON suffered: loss of liberty and freedom, physical inconvenience, physical discomfort, mental anguish, emotional suffering, embarrassment, humiliation,

injury to his reputation, loss of wages, economic loss, legal costs and fees. MATA'S monetary losses are continuing and accrue.

**WHEREFORE**, GIBSON demands judgment for compensatory and exemplary damages, cost of this action together with any post-judgment interests, reasonable attorney's fees pursuant to 42 U.S.C. §1988, trial by jury and other such relief as this Honorable Court may deem just and appropriate.

**COUNT V (FIVE)**
**MALICIOUS PROSECUTION AGAINST RAFFERTY**
**COGNIZABLE UNDER FLORIDA LAW**

For GIBSON'S cause of action against RAFFERTY, in Count V, GIBSON re-alleges and adopts, as if fully set forth, the allegations contained in paragraph 1-26 and 31-32 as if fully set forth in this Count and would further state as follows:

70. On or about April 26, 2019, GIBSON was arrested for DUI.

71. After GIBSON'S arrest, RAFFERTY'S actions caused GIBSON'S prosecution to be instituted in the County Court in and for Lake County, Florida, under Case No. 2019-CT-002536.

72. The criminal proceeding was resolved in favor of GIBSON as the Office of the State Attorney *nolle prossed* the DUI charge.

73. GIBSON'S prosecution was caused by RAFFERTY without probable cause. The matters known to RAFFERTY before instituting the aforementioned prosecution would not have warranted a reasonable person to believe that the criminal offenses had been committed by GIBSON. In the alternative, the prosecution of GIBSON was instituted by RAFFERTY with no reasonable likelihood of success.

74. RAFFERTY acted with legal malice in instituting the aforesaid prosecution, which is implied by the lack of probable cause, or with express malice as shown by his

reckless disregard for the rights of GIBSON, or with personal animosity and hostility towards, or for motives related to GIBSON'S treatment during his arrest. Further, RAFFERTY made misstatements of material fact and/or material omissions of material facts in support of the prosecution.

75. No prosecution of GIBSON would have occurred but for the actions of RAFFERTY.

76. GIBSON suffered damages as the fact of GIBSON'S prosecution became known to many persons as a result of being made part of the public records of Lake County, Florida and its appearance on court documents available for public scrutiny.

77. As a result of the aforementioned actions GIBSON suffered embarrassment, humiliation, mental anguish, emotional suffering, employment hardship, and physical discomfort, loss wages, economic loss and injury to his dignity and reputation, all of which continue to this day and is likely to continue in the future. He also incurred attorney's fees, associated legal expenses, and incidental monetary costs for his defense and present legal cause.

**WHEREFORE,** GIBSON demands judgment for compensatory damages and costs of this action and demands a jury trial of all issues triable.

By: *s/ Kevin R. Anderson*
KEVIN R. ANDERSON, ESQUIRE
Florida Bar No. 0044857
ANDERSON & WELCH, LLC
500 S. Australian Ave., 6th Floor
West Palm Beach, FL 33401-6237
Tel:  561-832-3386; Fax:   561-820-4867
e-mail: Andewelch@andersonandwelch.com
          kan@andersonandwelch.com
          *Attorney for Plaintiff*